**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Cleveland SIMS, Defendant–Appellant.**

**No. 53124.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 8, 1988.

**158**

James S. McKay, St. Louis, for defendant-appellant.

Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

Defendant appeals from his conviction by a jury of endangering the welfare of a child, § 568.050, RSMo 1986. He was fined $1,000.00. We *reverse*.

Defendant, the admitted father of the victim Jerrell Sims, was tried jointly with the mother, Linda Dailey. They were charged with first degree assault, § 565.050, RSMo 1986, and with endangering the welfare of a child, by failing to seek adequate medical attention for injuries of the child. The jury acquitted both defendant and the mother of first degree assault but found them guilty of endangering the welfare of a child and assessed as punishment a fine of $1,000.00 to each.

On appeal defendant contends the trial court erred in failing to sustain his motions for judgment of acquittal on the charge of endangering the welfare of a child. He argues the state's evidence did not establish that he knowingly failed to seek adequate medical treatment for the child.

When the sufficiency of the evidence is challenged, our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. In determining whether there was sufficient evidence, we accept as true all evidence tending to prove defendant guilty together with all reasonable inferences which support the verdict. We ignore all contrary evidence and inferences. *State v. Barnes*, 736 S.W.2d 471, 472 (Mo.App. 1987).

The state tried this case largely on the assault charges, contending defendant and Miss Dailey must have caused the child's injuries because they were his sole custodians. Little evidence was adduced regarding the charge of endangerment of the child by failing to obtain medical care. Further, in the state's closing argument to the jury, we are unable to find a direct reference to the endangerment charge against defendant.

The state's evidence supporting the conviction follows. The parents of Jerrell Sims were unmarried. The mother lived in the downstairs flat of a two-family residence, and defendant lived in the upstairs flat with his mother. The father and mother were, without dispute, the sole custodians of the baby, who was born on September 24, 1985.

The child received medical attention after birth. Miss Dailey testified she took Jerrell to Yateman Clinic, a free clinic near her home, in October 1985 because of a rash. She took him to Children's Hospital on November 1, also because of a rash. On November 7 defendant dropped the child, and the baby fell to the sidewalk and hit his head. The next morning the mother took the baby to the clinic because of this incident and because of the rash. On December 12, Jerrell was taken by the mother

to the clinic because of vomiting, fever, and swelling in the inguinal area. The baby was diagnosed as being dehydrated and was transferred and admitted to Children's Hospital for treatment that day. X-rays of Jerrell taken on December 14 and 15 at Children's Hospital revealed he had suffered numerous fractures. Dr. William McAlister, a radiologist, testified for the state concerning the x-rays. He stated he had determined the injuries occurred in at least three different incidents, based on the degrees of healing of the fractures as shown by the x-rays. He estimated the ages of the various injuries to be from 1–2 months to 5–7 days prior to the date of the x-rays.

On the November 8 visit to the clinic, records indicate the mother was instructed to "return to clinic on Tuesday, 11–12–85 to see Doctor Carmona for skull films" and "observe closely and [take the child] to E.R. [emergency room] if needed." Dr. Thomas Hines and a social worker at Children's Hospital testified Miss Dailey told them, after Jerrell had been admitted to Children's Hospital, that x-rays had been taken of Jerrell after the November 8 visit to the clinic. Clinic records of the visit on December 12 indicate the nurse believed x-rays had been taken at Children's Hospital in November. The records of the clinic show no x-rays of Jerrell, and Children's Hospital's records do not reflect an x-ray of the child prior to December 14.

Based on this evidence the state's sole argument on the issue of endangerment of the welfare of a child was directed against the mother:

> She goes back to Yateman on the 8th; [the baby] still has a leg rash, arm rash, head rash all over him. She also at that time told he fell out of his daddy's arms the day before. Ladies and gentlemen, if you don't believe me, read it in the record. Doctor Carmona told that woman to bring that child back on the 12th of November for skull films. She didn't. But she turned around a month later and told Yateman's that she had taken him to Children's and that Children's had done x-rays. Now what does that say to you? Why would she tell one hospital they did

it and the other hospital they did it when neither hospital never x-rayed that child? Because she knew or had reason to know what those x-rays just very well might show. And she did lie. And in lying, she endangered that child's welfare even more. Because then neither place did what they would have otherwise done.

The state presented no evidence defendant had knowledge of the request to return for x-rays on November 12, of the mother's failure to take Jerrell for x-rays, or of the mother's claim that x-rays had been taken.

To endanger the welfare of a child under § 568.050, a defendant must "knowingly" act in a manner that "creates a substantial risk to the life, body or health of a child less than seventeen years old." "Knowingly" under the statute means actual knowledge of the fact. *State v. Nations*, 676 S.W.2d 282, 284–85 (Mo.App.1984). The state's evidence did not show defendant knowingly failed to obtain medical attention for the baby.

■ This determination, however, does not end our inquiry. Defendant chose to present evidence, and, in doing so, he took a chance of aiding the state's case, because an appellate court considers any evidence offered by the defendant which tends to support a finding of guilt. *State v. Wells*, 729 S.W.2d 591, 593 (Mo.App.1987); *State v. Lassen*, 679 S.W.2d 363, 367 (Mo.App. 1984).

Defendant testified, admitting he accidentally had dropped the baby on November 7. He knew the baby was taken to the clinic on November 8 to find out if he was injured. Defendant testified it was never stated to him that x-rays were or were not taken. When asked if the mother told him that the clinic had instructed her to bring Jerrell back for x-rays on November 12, he responded, "Yes. A date had been set, I believe."

As can be seen from the state's argument, the crucial issue was the defendant's knowledge of the mother's failure to follow-up on the instructions to return for x-rays. The state's evidence indicated defendant dropped the baby on November 7,

but Jerrell was taken to the clinic the next day; the state introduced no evidence that defendant actually knew the mother had been instructed to take the child for x-rays on November 12. Defendant's testimony that he knew of the clinic's instructions was uncertain. Although he stated the mother *later* told him x-rays were scheduled, the state failed to pinpoint the date he received this information. In light of all the evidence, we conclude it is insufficient to support a finding that defendant knowingly failed to obtain adequate medical attention for Jerrell, thereby creating a substantial risk to his life, body, or health. Therefore, the court erred in submitting to the jury the charge of endangering the welfare of a child against defendant.

Reversed.